**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Samuel H. SLOAN and Samuel H. Sloan & Co., Defendants.**

**No. 71 Civ. 2695.**

United States District Court, S. D. New York.

Jan. 7, 1974.

William D. Moran, New York City, for plaintiff; Jerome Mitchell Selvers, New York City, Thomas R. Beirne, Ossining, N. Y., and William Nortman, New York City, of counsel.

Samuel H. Sloan, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT J. WARD, District Judge.

On June 17, 1971, plaintiff Securities and Exchange Commission ("Commission") filed a complaint against defendants Samuel H. Sloan ("Sloan") and Samuel H. Sloan & Co. ("Sloan & Co.") seeking injunctive and other relief for alleged violations of Sections 15(b)(1), 15(c)(3) and 17(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78*o*(b)(1), 78*o*(c)(3) and 78q(a), and Rules 17 C.F.R. 240.15b1–2, 15c3–1, 17a–3 and 17a–4 promulgated thereunder ("Broker-Dealer Registration", "Net Capital" and "Bookkeeping Rules").

Thereafter, on June 24, 1971, this Court entered an order, on consent, which preliminarily enjoined defendants from further violations of the net capital and bookkeeping requirements of the federal securities laws.

The action was tried, non-jury, in December 1973 and the Court now makes the following findings of fact and conclusions of law:[1]

### Findings of Fact

1. The Commission is authorized to bring this action pursuant to Section 21(e) of the Exchange Act, as amended, 15 U.S.C. § 78u(e).

2. Sloan & Co. is a sole proprietorship and had its office and place of busi-

---

1. At trial, the Commission abandoned all claims other than its claim for a permanent injunction.

ness at 120 Liberty Street, New York, New York. The office was closed on August 16, 1973. Sloan & Co. has been registered with the Commission as a broker-dealer pursuant to Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), since May 10, 1970. Sloan is the sole proprietor and manager of Sloan & Co.

I. *Violations of Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a–3 promulgated thereunder.*

3. During January and February 1971, Arthur Bruder ("Bruder"), an investigator on the staff of the Commission, visited the office of Sloan & Co. for the purpose of determining whether the books and records of Sloan & Co. were being maintained properly and on a current basis.

4. During March, April, May, June and August 1971, Sheldon Kanoff ("Kanoff"), also an investigator on the staff of the Commission, visited the office of Sloan & Co. for the same purpose.

5. During May, June and August 1973, George Appoldt ("Appoldt"), another investigator on the staff of the Commission, visited the office of Sloan & Co. for a similar purpose.

6. On August 16, 1973, Kanoff, accompanied by Jerome Selvers ("Selvers"), an attorney on the staff of the Commission, visited the office of Sloan & Co. for the same purpose.

7. As a result of his January 1971 examination of Sloan & Co.'s books and records, Bruder determined that as of January 15, 1971, Sloan & Co. failed to maintain properly and keep current the following books and records: (a) General Ledger—not properly maintained in that capital and income and expense items were improperly recorded; (b) Trading Account—not maintained currently; (c) Trial Balance—not prepared; (d) Account Record of bank balances—not maintained; (e) Fail to Receive Ledger; Fail to Deliver Ledger; Stock Record—not maintained currently.

8. Sloan was informed by the Commission of Bruder's determination and was asked to furnish a trial balance and supporting schedules. A trial balance was submitted on January 18, 1971. However, supporting schedules showing firm inventory and fails to deliver and receive were not furnished and Bruder was unable to make a capital computation based on the submission.

9. On February 25, 1971, Bruder observed that neither the stock record nor the customer ledger of Sloan & Co. was up to date, and, since capital was not properly recorded, that the general ledger was inaccurate.

10. On March 19, 1971, Kanoff observed that the books and records of Sloan & Co. indicated a capital contribution of $58,000 by Mr. Joseph Iny. In fact, Mr. Iny never contributed capital to Sloan & Co. but was, instead, a customer of the firm. In addition, although the books and records of the firm included shares of Kaiser Steel Industries in the firm trading account, these shares were at all times part of Mr. Iny's customer account.

11. On April 8, 1971, Kanoff observed that Sloan & Co. did not have a complete set of books and records. All that he found were machine run debit and credit slips from which a capital contribution could not be prepared and which did not provide the information which is to be included in books and records required to be maintained under Rule 17a–3.

12. On May 6, 1971, Kanoff requested but did not obtain the delivery tickets relating to sales and, on June 9, 1971, Kanoff requested but did not obtain a trial balance as of the end of May 1971.

13. On August 12, 1971, Kanoff observed that the general ledger of Sloan & Co. was only posted through July 31, 1971, in violation of Rule 17a–3. This was less than two months after Sloan & Co. and Sloan had consented to a preliminary injunction enjoining them from further violations of the rules.

14. Moreover, the firm's trading inventory submitted to the Commission in August 1971 was inaccurate, in that it included certain securities which had been transferred to the firm of J. S. Love & Co., and therefore, were not in the possession of Sloan & Co.

15. Sloan & Co. did not prepare monthly capital computations from January 1, 1971 through December 31, 1971, as required by Rule 17a–3.

16. On May 29 and 30, 1973, Appoldt observed entries on the books and records of Sloan & Co. indicating payments as consulting fees but no entries reflecting employees' salaries. Attempts to verify these entries were unsuccessful. On the other hand, Hafdis Simonarson testified that she was employed by Sloan & Co. from September 1972 to May 1973 and that there was at least one other employee, Johanna Baldursttir.

17. On August 2, 1973, Appoldt observed that the firm's books and records were not current as they were only posted through July 30, 1973.

18. The trial balance submitted by Sloan & Co. as at August 2, 1973 fails to disclose trades in Canadian Javelin, Ltd. ("Canadian Javelin") stock. In addition, the trial balance fails to disclose that shares of Canadian Javelin were borrowed by Sloan & Co. and were, in fact, owed to other broker-dealers.

19. On August 16, 1973, Appoldt visited Sloan & Co. to inspect the firm's capital computations. Sloan did not furnish them and informed him that he would bring them to the Commission's New York Regional Office later that day. When Sloan failed to appear at the Commission's office, Kanoff and Selvers went to Sloan & Co.'s offices and asked Sloan for the firm's capital computations. Sloan was unable to produce the requested capital computations.

20. At no time since August 16, 1973 has Sloan made his books and records

available for inspection by the Commission staff, although numerous efforts were made by the Commission to arrange such an inspection.

II. *Violations of Section 15(c)(3) of the Exchange Act, 15 U.S.C. § 78o(c)(3) and Rule 15c3–1 promulgated thereunder.*

21. On January 25, 1971, Bruder prepared from the books and records of Sloan & Co. a trial balance as of January 18, 1971. Based upon this trial balance and other information obtained from the books and records of Sloan & Co. and using the pink sheets and public journals for pricing purposes, Bruder determined that Sloan & Co. had an adjusted net capital deficiency of $28,016 as of January 18, 1971.[2]

22. Thereafter, Bruder prepared from the books and records of Sloan & Co. a trial balance as of January 29, 1971. Based upon this trial balance and other information obtained from the books and records of Sloan & Co. and using the pink sheets and public journals for pricing purposes, Bruder determined that Sloan & Co. had an adjusted net capital deficiency of $11,912 as of January 29, 1971.

23. On March 18, 1971, Kanoff prepared from the books and records of Sloan & Co. a trial balance as of February 26, 1971. In determining the net capital of Sloan & Co., Kanoff treated $58,000 owed to Mr. Joseph Iny as a liability instead of a capital item. Using the pink sheets for pricing purposes, Kanoff determined that Sloan & Co. had a net capital deficiency of $15,961 as of February 26, 1971.

24. Sloan & Co. submitted to the Commission a balance sheet and supporting documents as of June 30, 1971. Sloan & Co.'s own computations prepared by its accountant, Robert W. Taylor & Co., reflected a net capital deficit

---

2. The adjusted net capital is current assets, less liabilities, less deductions to allow for market fluctuations for securities held. When this figure is less than zero dollars, a deficit results. The total deficiency is this deficit, plus the required minimum capital, at that time $5,000 and later $15,000.

of $19,221. Based on the submitted documents, Kanoff determined that Sloan & Co. had a net capital deficiency of $24,222 as of June 30, 1971.

25. Sloan & Co. submitted to the Commission trial balances and supporting schedules as of July 31, August 31, September 30, October 8, November 30, and December 31, 1971 and January 31, 1972. Using the pink sheets for pricing purposes, Kanoff determined that Sloan & Co. had net capital deficiencies as follows:

| | |
|---|---|
| July 31, 1971 | $70,864. |
| August 31, 1971 | $16,588. |
| September 30, 1971 | $24,529. |
| October 8, 1971 | $ 8,345. |
| November 30, 1971 | $ 9,810. |
| December 31, 1971 | $13,480. |
| January 31, 1972 | $ 718. |

26. Subsequent to his determination of net capital deficiencies as of July 31, August 31, September 30, October 8, November 30, and December 31, 1971, Kanoff met with the accountant for Sloan & Co. and based upon additional information furnished at that time, Kanoff adjusted the net capital deficiencies to reflect capital deposits by Sloan & Co. which had previously been treated as liabilities. After including these additional funds as capital, Sloan & Co. still had net capital deficiencies as follows:

| | |
|---|---|
| July 31, 1971 | $70,064. |
| August 31, 1971 | $15,789. |
| September 30, 1971 | $10,729. |
| October 8, 1971 | $ 7,545. |
| November 30, 1971 | $ 4,010. |
| December 31, 1971 | $ 4,557. |

27. During the period from January 1971 through January 31, 1972, Sloan & Co. continued to effect transactions in securities in interstate commerce and otherwise than on a national securities exchange as demonstrated by the following:

(a) In January 1971, Bruder overheard telephone conversations wherein Sloan gave or received quotations on prices of stock, and, in addition, found changes in the firm's inventory;

(b) On March 19, 1971, Kanoff overheard Sloan giving quotations on prices of stock, and, in addition, observed confirmations lying about the office, securities being delivered by runners and entries in the firm's checkbooks;

(c) On April 8, 1971, Kanoff overheard telephone conversations wherein Sloan gave or received quotations on securities, and, in addition, observed runners entering and leaving the office and observed confirmations and securities on the premises;

(d) On May 6, 1971, Kanoff overheard telephone conversations concerning securities and observed the presence of runners and securities in the office;

(e) On August 10, 1971, Kanoff observed confirmations with current dates about the office and securities in view;

(f) On August 12, 1971, Kanoff overheard telephone conversations concerning securities, and observed recent confirmations of trades and the preparation of tickets for the firm's record keeping service;

(g) A comparison of the trial balances for July 1971 and August 1971 indicates that Sloan & Co. was receiving and delivering securities, and paying checks;

(h) A comparison of the trading account for the months ending July 31, 1971, August 31, 1971 and September 30, 1971 indicates that Sloan & Co. entered into at least seven transactions, which represented new business;

(i) During the month of August 1971, Sloan & Co. transferred to the brokerage firm of J. S. Love & Co. a number of securities, including securities resulting from the transaction of new business, which, as noted above, were represented according to the firm trading inventory submitted to the Commission, as being in the possession of Sloan & Co.;

(j) In December 1971, Sloan & Co. applied to the National Quotation Bureau for listing in the pink sheets;

(k) In January 1972, Sloan & Co. listed bid and asked quotations for a number of securities with the National Quotation Bureau, and in the pink sheets.

28. On May 29 and 30, 1973, Appoldt prepared from the books and records of Sloan & Co. a trial balance as of May 24, 1973. Based upon this trial balance and other information obtained from the books and records of Sloan & Co. and using the pink sheets and public journals for pricing purposes, Appoldt determined that Sloan & Co. had a net capital deficiency of $4,383 as of May 24, 1973.

29. On August 6, 1973, Sloan & Co. submitted to the Commission a trial balance containing only a schedule of positions as of August 2, 1973. This schedule omitted all trades in Canadian Javelin. Based upon this trial balance, Appoldt determined that Sloan & Co. had a net capital deficiency of $20,046 as of August 2, 1973.

30. The parties have stipulated for the purposes of this lawsuit, that as a result of trading in Canadian Javelin, defendants sustained a loss of $40,000. Thus, Sloan & Co. had a net capital deficiency in excess of $20,046 as of August 2, 1973.

31. During the months of May 1973 and August 1973, Sloan & Co. continued to effect transactions in securities in interstate commerce and otherwise than on a national securities exchange as demonstrated by the following:

(a) An examination of the firm's trial balances, as well as the fact that in May 1973, Appoldt overheard telephone conversations concerning securities and observed confirmations lying about the firm's office;

(b) In August 1973, Kanoff observed confirmations and order tickets, some of which bore current dates, and securities lying about the firm's office, as well as entries in the firm's checkbooks.

### Conclusions of Law

1. This Court has jurisdiction under Section 27 of the Exchange Act, 15 U.S. C. § 78aa.

2. From on or about January 15, 1971 through January 31, 1972, as well as from May 1973 to date, Sloan & Co., under the direction of Sloan wilfully violated Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rules 17a–3 and 17a–4 promulgated thereunder, in that Sloan & Co. failed to properly maintain, keep current and preserve certain of its books and records, including: Ledgers or other records reflecting all assets and liabilities, income and expense and capital accounts; A securities record or ledger; A firm trading account; Ledgers (or other records) reflecting securities failed to receive and failed to deliver; Trial balances (or other records of all ledger accounts); and Computations of aggregate indebtedness and net capital.

3. From on or about January 18, 1971 through January 31, 1972 as well as May and August 1973, Sloan & Co., under the direction of Sloan wilfully violated Section 15(c)(3) of the Exchange Act, 15 U.S.C. § 78o(c)(3), and Rule 15c3–1 promulgated thereunder, in that Sloan & Co. effected transactions in securities (other than exempted securities or commercial paper, bankers' acceptances or commercial bills) otherwise than on a national securities exchange while and at a time when its aggregate indebtedness to all other persons exceeded 2,000 per centum of its net capital and, in addition, its net capital was less than $5,000 or $15,000 as required.

4. While engaged in the above described acts, practices and course of business, defendants, directly and indirectly, made use of the mails and means and instruments of transportation and communication in interstate commerce, and of the means and instrumentalities of interstate commerce, and effected the transactions otherwise than on a national securities exchange.

5. The issuance of a permanent injunction is necessary to protect the public against the continuation or repetition of the above described violations

and, unless permanently enjoined, there is a likelihood that the defendants will continue to engage in violations of the Exchange Act and the Rules promulgated thereunder.

Settle judgment on notice.